DiSANTO

v.

SAFECO INSURANCE OF AMERICA et al., Appellees;
Vigilant Insurance Company, Appellant.

[Cite as *DiSanto v. Safeco Ins. of Am.,* 168 Ohio App.3d 649, 2006-Ohio-4940.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2005–P–0095.

Decided Sept. 22, 2006.

Hazelwood & Kasle, Andrew R. Kasle, for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., Joseph W. Gelwicks, and Lynne M. Longtin, for appellee Safeco Insurance of America.

Weston Hurd, L.L.P., Robert E. Goff Jr., and Randy L. Taylor, for appellee East Storage VI Limited Partnership, d.b.a. West Geauga Self–Storage.

DIANE V. GRENDELL, Judge.

{¶ 1} Plaintiff-appellant, Vigilant Insurance Company ("Vigilant") appeals the separate judgments of the Portage County Court of Common Pleas. The first judgment granted summary judgment in favor of defendant-appellee, Easy Storage VI, Limited Partnership, d.b.a. West Geauga Self–Storage ("West Geauga"). The second judgment granted summary judgment in favor of defendants-

appellees, Safeco Insurance Company ("Safeco"). For the reasons that follow, we affirm in part and reverse in part the decision of the court below.

{¶ 2} On or about July 16, 1999, plaintiff Louis F. DiSanto, through his attorney and friend, Sandra Hunter, entered into a contract with West Geauga to place some of his household furniture and collectibles into storage ("the property"), while his home was being remodeled.

{¶ 3} The contract between DiSanto and West Geauga consisted of a standard form contract, as well as a "Tenant Responsibility Lease Addendum," which contained a prominent notice in the heading that "TENANTS STORE GOODS AT THEIR OWN RISK." The lease contract provided:

{¶ 4} "2. THESE FACILITIES ARE OPERATED IN ACCORDANCE WITH THE OHIO SELF-STORAGE FACILITY ACT, Chapter 5322 of the Ohio Revised Code.

{¶ 5} "11. LESSEES SOLE RISK AND NO BAILMENT: Storage of any and all property within the leased premises shall be at Lessee's sole risk and no bailment is created hereunder.

{¶ 6} "12. INSURANCE: Lessee is solely responsible for the acquisition of insurance from independent insurance companies. Lessee may purchase customer storage insurance through Lessor in Accordance with the 'Tenant Responsibility Lease Addendum' to be signed at the time of signing this agreement, and which is incorporated herein as if rewritten.

{¶ 7} "13. LESSOR NOT LIABLE: Lessor shall have no liability for loss or damage to any property stored in the leased premises or otherwise, due to, but not limited to, fire, flood, mildew, theft, rodents, pipe breakage, or any other damage occasioned by water, snow, ice upon coming through the roof, door, walls, or by acts and/or negligence of Lessee or any third party, or by force majeure or any act of God * * *.

{¶ 8} "16. USE OF STORAGE SPACE: Lessor is not engaged in the business of storing goods for hire and no bailment is created under this Agreement. Lessor exercises neither care, custody, nor control over Lessee's stored property. Lessee agrees to use the storage space only for the storage of property wholly owned by Lessee.

{¶ 9} "Lessee acknowledges that Lessor has not been advised as to the type, nature, or value of the property Lessee will store. Lessee agrees not to store collectibles, heirlooms, jewelry, works of art, or any property having special or sentimental value to Lessee. Lessee hereby waives any claim for emotional or sentimental attachment to the stored property * * *."

{¶ 10} The "Tenant Responsibility Lease Addendum" additionally provided as follows:

{¶ 11} "1. This is an Addendum to, and made a part of that certain Storage Lease Agreement, dated July 16, 1999, between the parties hereto. The below named Lessee hereby states and agrees as follows:

{¶ 12} " * * *

{¶ 13} "3. I understand that the Lessor, and/or its management, agents and employees:

{¶ 14} "i. Is not responsible for loss or damage to my property;

{¶ 15} "ii. Does not provide insurance for my stored property;

{¶ 16} "iii. Is a commercial business renting space for Lessee's self service use, and is not a bailor or warehouseman."

{¶ 17} At the time the contract was executed with West Geauga, Hunter received a brochure for a "Customer Storage Insurance" policy through MiniCo, Inc., which was underwritten by Safeco. DiSanto elected to purchase this insurance in the coverage amount of $40,000 and timely paid his premiums. As evidence of coverage, Safeco issued a "Customer Policy Certificate of Insurance" to DiSanto on July 20, 1999. Thereafter, this policy was in full force and effect at all relevant times mentioned herein.

{¶ 18} In addition to the policy issued through MiniCo for the stored items, DiSanto was also insured against property loss under a comprehensive home-owners insurance policy issued by Vigilant to DiSanto. This policy was likewise in full force and effect at all relevant times.

{¶ 19} The property remained in storage in West Geauga's facilities until February 28, 2001. When DiSanto returned to West Geauga to pick up his property, he discovered that it had sustained extensive water damage.

{¶ 20} DiSanto subsequently filed a claim through MiniCo to Safeco for damage to the property. Safeco subsequently denied DiSanto's claim.

{¶ 21} On February 27, 2003, DiSanto filed a complaint in the Portage County Court of Common Pleas against West Geauga, asserting a negligence claim, and against Safeco, claiming that Safeco had breached the contract of insurance. Among the various types of relief requested, DiSanto's complaint sought $23,420 as compensatory damages for his loss.

{¶ 22} Later, DiSanto filed a claim under his Vigilant homeowner's insurance policy to recover for his damages. Since the property was also covered under the Vigilant policy, Vigilant paid $20,000 to DiSanto for the damaged items. Safeco eventually paid $10,000 directly to DiSanto for his damages.

{¶ 23} Following payment under its policy to DiSanto for his damages, Vigilant filed a motion to intervene as subrogee to DiSanto's claim. After the trial court granted this motion, Vigilant filed a complaint as a new party plaintiff against West Geauga, alleging breach of contract, breach of the common-law contract of bailment, negligence, fraud, and negligent misrepresentation. The complaint also alleged a breach-of-contract claim against Safeco.

{¶ 24} On January 28, 2004, Safeco filed a motion for summary judgment against DiSanto and Vigilant. West Geauga, DiSanto, and Vigilant all filed briefs in opposition to this motion. On May 17, 2004, West Geauga filed its own motion for summary judgment against Vigilant and DiSanto.

{¶ 25} On September 1, 2004, the trial court granted West Geauga's motion for summary judgment, ruling against both DiSanto and Vigilant. On the same date, Safeco's motion for summary judgment was denied.

{¶ 26} Jury trial on the remaining issues was set for March 29, 2005. Following a status conference held on March 15, 2005, the parties agreed that the remaining issues could be resolved by summary judgment. To this end, DiSanto stipulated to the dismissal of his case against Safeco, leaving Safeco and Vigilant as the only remaining parties to the litigation.

{¶ 27} On June 24, 2005, Vigilant and Safeco filed joint stipulations of fact with the trial court, in which they stipulated to the aforementioned facts, as well as the following:

{¶ 28} "The 'Other Insurance' provision of the Safeco 'Customer Policy Certificate of Insurance' states: 'If a loss covered by this policy is also covered by other insurance, we will pay only the amount of the loss in excess of the amount due from that other insurance, whether you collect it or not.'

{¶ 29} "The 'Other Insurance' provision of the Vigilant Homeowner policy states: 'When other property insurance applies to a covered loss, we will pay only the portion of the loss that our amount of coverage bears to the total amount of insurance covering the loss.'

{¶ 30} "The Safeco 'Customer Policy Certificate of Insurance' is a specific coverage policy, specifically providing insurance coverage for DiSanto's personal property maintained in a 'storage facility' pursuant to a 'lease or rental agreement'.

{¶ 31} "The Safeco 'Customer Policy Certificate of Insurance' was offered for sale to customers at West Geauga.

{¶ 32} "Vigilant's policy is a general homeowner's policy and provides coverage on the homeowner's property. Vigilant's policy does not specify coverage for

personal property maintained in a 'storage facility' pursuant to a 'lease or rental agreement'.

{¶ 33} "Vigilant's policy was not offered for sale to customers at West Geauga.

{¶ 34} "The remaining issue before the Court is which policy, Vigilant's or Safeco's, provides primary coverage for the loss. If the Court determines Vigilant's policy is primary, judgment should be rendered for Safeco and against Vigilant; if the Court determines Safeco's policy is primary, judgment should be rendered for Vigilant and against Safeco in the amount of $20,000, plus interest from February 28, 2001."

{¶ 35} On June 29, 2005, Vigilant and Safeco filed cross-motions for summary judgment.

{¶ 36} On November 2, 2005, the trial court entered judgment, granting Safeco's motion for summary judgment and denying Vigilant's motion.

{¶ 37} Vigilant timely appeals the trial court's judgments granting summary judgment in favor of West Geauga and Safeco, assigning the following as error:

{¶ 38} "[1.] The Trial Court erred in granting summary judgment in favor of Easy Storage VI dba West Geauga Self–Storage since there are genuine questions of fact and issues of law remaining regarding Easy Storage VI dba West Geauga Self–Storage's liability.

{¶ 39} "[2.] The Trial Court erred in granting summary judgment in favor of Safeco Insurance Company of America and denying summary judgment to Appellee [sic] by misinterpreting and misapplying Ohio Insurance law, since Safeco's Certificate provided primary coverage for the loss and Vigilant's policy only provided secondary coverage for the loss."

{¶ 40} Since both assignments of error challenge the trial court's grant of summary judgment, we first address the appropriate standard of appellate review.

{¶ 41} "Summary judgment is a procedural device to terminate litigation and to avoid formal trial where there is nothing to try." *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138. Thus, summary judgment is proper when three conditions are satisfied: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; *Harless v. Willis Day Warehousing Co.* (1976), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving

party. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Since a trial court's decision whether or not to grant summary judgment involves only questions of law, an appellate court conducts a de novo review of the trial court's judgment. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. (Citation omitted.) *Brown v. Cty. Commrs. of Scioto Cty.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 42} Under Civ.R. 56(C), "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Citation omitted.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Material facts are those relevant to the substantive law applicable in a particular case. *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 827, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court for the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." Id. "However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.

{¶ 43} In its first assignment of error, Vigilant argues that West Geauga's motion for summary judgment was improvidently granted, because the motion failed to address Vigilant's fraud and negligent-misrepresentation claims.

{¶ 44} The crux of Vigilant's claim centers on the argument that there are genuine issues of material fact with respect to whether West Geauga's agents engaged in active fraud or negligently misrepresented the facts with respect to the meaning of "climate controlled" and the "dry and safe" nature of their facilities. Those misrepresentations would render the exculpatory provisions of the contract and the addendum null and void. Reviewing the record at this stage of the proceedings, we agree.

{¶ 45} Ohio courts have uniformly held that in order to establish actionable fraud, a party must demonstrate the following elements:

{¶ 46} "(1) a false representation concerning a fact material to the transactions; (2) knowledge of the falsity of the statement or utter disregard for its truth; (3) intent to induce reliance on the misrepresentation; (4) *reliance under circumstances manifesting a right to rely* ; and (5) injury resulting from the reliance." (Emphasis added.) *Kempe v. Cuyahoga Cty. Welfare Dept. of Social Servs.* (Jun. 30, 1988), 8th Dist. No. 53857, 1988 WL 87623, at *6, quoting *Sanfillipo v. Rarden* (1985), 24 Ohio App.3d 164, 166, 24 OBR 253, 493 N.E.2d 991; *Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 22 O.O.3d 422, 429 N.E.2d 456, at paragraph one of the syllabus.

{¶ 47} On the other hand, the elements of negligent misrepresentation are as follows:

{¶ 48} " 'One who, in the course of his business, profession or employment * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " (Emphasis sic.) *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, quoting 3 Restatement of the Law 2d, Torts (1965) 126–127, Section 552(1).

{¶ 49} Hunter's affidavit, submitted by the plaintiffs with their briefs opposing West Geauga's motion for summary judgment, alleges that she spoke with Bridget McLaughlin, the former property manager of West Geauga, who assured her that "a 'climate controlled' unit at West Geauga * * * would be warm during cold weather (with heating); [and] cool during hot weather (with air conditioning); and that the contents would be dry and safe from damage."

{¶ 50} Accepting Vigilant's allegations that a verbal representation was made indicating that "climate control" meant that "the storage unit would be regulated as to temperature, humidity, moisture, and dryness conditions" and that the storage area would be "dry and safe," there is a genuine issue of fact as to whether appellant justifiably relied on the alleged representations of West Geauga's agent. The credibility of Hunter is not a proper issue under a summary judgment motion and, therefore, must be resolved by the trier of fact.

{¶ 51} Vigilant's first assignment of error has merit. The trial court's grant of summary judgment as to Vigilant's claims for fraud and negligent misrepresentation was inappropriate and is hereby reversed.

{¶ 52} In its second assignment of error, Vigilant, relying on *Trinity Universal Ins. Co. v. Gen. Acc., Fire & Life Assur. Corp., Ltd.* (1941), 138 Ohio St. 488, 21 O.O. 64, 35 N.E.2d 836, claims that the trial court erred, as a matter of law, in finding that Safeco was entitled to summary judgment. In *Trinity*, the Ohio Supreme Court held that when there are two separate insurance policies, one

covering general risk and one covering specific risk, the insurer covering the specific risk is primarily liable for the loss. Id. at 490–491, 21 O.O. 64, 35 N.E.2d 836. Vigilant argues that since the specific purpose of Safeco's policy was to cover the loss of property held in storage and Vigilant's policy was only a general policy that covered property, then Safeco is primarily liable for the damages incurred. We disagree.

{¶ 53} Initially, we note that prior to the filing of the parties' cross-motions for summary judgment, both parties stipulated that DiSanto was insured against property loss under each of the policies and that the sole remaining issue before the Court is which policy, Vigilant's or Safeco's, provides primary coverage for the loss. "[W]hen a stipulation of facts is handed up by the adversaries in a case, the trier of facts must accept what is set forth as a statement of settled fact that is undisputed and binding upon the parties to the agreement." *Newhouse v. Sumner* (Aug. 6, 1986), 1st Dist. No. C–850665, 1986 WL 8516, at *1. Thus, Vigilant cannot now claim that its policy was not intended to cover the kind of loss sustained herein, i.e. "property loss."

{¶ 54} Moreover, courts in Ohio have moved away from the "general" and "specific" coverage analysis of *Trinity*. See *Meridian Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.* (S.D.Ohio 1988), No. C2–97–753, 1998 WL 1966426, at *5 (in cases where two insurance policies cover the same risk, "it is the policy language explaining the relationship of the insurance coverage in one policy to insurance coverage in another policy * * * which is the most important factor in determining the existence of a primary insurer"); see also, *Bertsch v. Nationwide Mut. Ins. Co.*, 5th Dist. No. 02 CA 49, 2003-Ohio-1105, 2003 WL 953373, at ¶ 24–25.

{¶ 55} In the instant matter, the "other insurance" provision of the Vigilant policy states as follows:

{¶ 56} "When other property insurance applies to a covered loss, we will pay on the portion of the loss that our amount of coverage bears to the total amount of insurance covering the loss."

{¶ 57} On the other hand, the "other insurance" provision of the Safeco policy provides:

{¶ 58} "If a loss covered by this policy is also covered by other insurance, we will pay only for the amount of covered loss *in excess of the amount due from that other insurance,* whether you can collect on it or not." (Emphasis added).

{¶ 59} It has been held that "[w]here one insurer insures against a loss and provides that it shall not be liable for a greater proportion of the loss than the applicable limit of liability stated on its declarations bears to the total applicable

limit of liability of all valid and collectible insurance against such loss, and another insurer insures against the same loss and additionally provides that such insurance shall be excess insurance over any other valid and collectible insurance * * *, effect should be given to the latter provision, and the first insurer should be held to be the primary insurer." (Citation omitted.) *Motorists Mut. Ins. Co. v. Lumbermens Mut. Ins. Co.* (1965), 1 Ohio St.2d 105, 30 O.O.2d 428, 205 N.E.2d 67, at syllabus; *Johnson v. Hundley,* 9th Dist. No. 21402, 2003-Ohio-6812, 2003 WL 22956835, at ¶ 26.

{¶ 60} A reading of the language of the respective "other insurance" clauses indicates that Safeco's policy is clearly intended to provide excess coverage, and thus Safeco is the secondary insurer, whereas Vigilant's policy will pay up to the amount of its policy limits. Accordingly, Vigilant is the primary insurer, and summary judgment was properly granted.

{¶ 61} Vigilant's second assignment of error is without merit.

{¶ 62} For the foregoing reasons, we reverse the judgment of the Portage County Court of Common Pleas granting summary judgment in favor of West Geauga and against Vigilant. We affirm the judgment granting summary judgment in favor of Safeco and against Vigilant. This case is remanded to the court below for proceedings consistent with this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

RICE, J., concurs.

O'TOOLE, J., dissents.