[Cite as *DiBlasi v. First Seventh-Day Adventist Community Church*, 2014-Ohio-2702.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| SALVATORE AND CATENA DiBLASI, et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | **CASE NO. 2013-G-3169** |
| - vs - | : | |
| FIRST SEVENTH-DAY ADVENTIST COMMUNITY CHURCH, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 12 P 000516.

Judgment: Reversed and remanded.


*Thomas J. Silk,* Obral, Silk & Associates, 1370 Ontario Street, Suite 1520, Cleveland, OH 44113 (For Plaintiffs-Appellants).

*Robert J. Foulds,* Dyson, Schmidlin & Foulds Co., L.P.A., 5843 Mayfield Road, Mayfield Heights, OH 44124-2909 (For Defendants-Appellees).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Salvatore DiBlasi, et al., appeal the summary judgment entered by the Geauga County Court of Common Pleas in favor of appellees, First Seventh-Day Adventist Community Church, et al., on appellants' claim for negligence. At issue is whether genuine issues of material fact exist, precluding summary judgment. For the reasons that follow, we reverse and remand.

{¶2} Appellants are residents of Chesterland, Ohio. Appellants, Salvatore and Catena DiBlasi, reside on the south side of Mayfield Road at 7501 Mayfield Road. Appellant, Frank DiBlasi, has an ownership interest in that residence. Appellant, Gwendolyn Stemple, resides next door at 7511 Mayfield Road. Appellants have owned their respective properties for many years. Appellees, First Seventh-Day Adventist Church and Ohio Conference of Seventh-Day Adventists ("the church") own, occupy, and/or conduct business directly across the street from appellants on the north side of Mayfield Road at the intersection of Mayfield Road and Barrington Road.

{¶3} On May 25, 2012, appellants filed a complaint alleging the church negligently constructed, placed, or maintained a footbridge on its property over a drainage ditch. Appellants alleged that, as a result of said negligence, the bridge became detached from its foundation during a rainstorm and obstructed a nearby culvert, which caused appellants' properties to be flooded and damaged. Appellants prayed for damages in an unspecified amount in excess of $25,000.

{¶4} The church filed an answer admitting that appellants sustained damage to their properties by floodwater on May 31, 2010, but denying the remaining allegations of the complaint. The parties exchanged discovery, following which the church filed a motion for summary judgment. In due course, appellants filed a brief in opposition. The statement of facts that follows is based on the parties' evidentiary materials.

{¶5} Appellant, Salvatore DiBlasi, stated in his affidavit that on May 31, 2010, there was a heavy rainfall in the Chesterland area. Rainwater quickly accumulated on the DiBlasi property reaching heights of two to three feet. Water flooded the interior of

2

their home, and damaged or destroyed all their belongings and property on the first floor.

{¶6} During the downpour, Mr. DiBlasi learned the cause of the flooding might be located across Mayfield Road on the church property. As a result, he and his neighbor, David Mapes, went to the church property, and saw the entire lawn of the church was flooded. They also saw a wooden footbridge had become dislodged from its foundation on the church property; had floated a short distance; and became lodged against a culvert drainage pipe running underneath Barrington Road. This blockage caused the water, which otherwise would have flowed into the culvert pipe, to back up.

{¶7} Mr. DiBlasi said that Mr. Mapes went to his home, obtained his forklift, and drove it to the church property. Mr. Mapes moved the footbridge away from the culvert drainage pipe and placed it above the drainage pipe near Barrington Road. Immediately after removing the footbridge from the drainage pipe, the water began to freely flow through the pipe under Barrington Road and the water quickly receded.

{¶8} Mr. DiBlasi said that, based on his observations, the wooden footbridge coming loose from its foundation and blocking the culvert pipe running under Barrington Road was the sole cause of the water flooding their property.

{¶9} Mr. DiBlasi's wife, Catena DiBlasi, stated in her affidavit that during the rainfall on May 31, 2010, their home was flooded and they experienced water depths of two to three feet in all areas of the home. She said that, due to the rapidly rising water, she had to be assisted out of their home through a window, and she was placed in the back of a pickup truck until the floodwater receded.

3

**{¶10}** Mrs. DiBlasi said that the water totally flooded their home, then receded rapidly. Thereafter, her husband told her that the footbridge on the church property had become loose and blocked the drainage pipe at Barrington Road; that he assisted in removing the footbridge; and that once it was moved, the water receded.

**{¶11}** Frank DiBlasi, Mr. and Mrs. DiBlasi's son, stated in his affidavit that on May 31, 2010, he was called to his parents' home due to the flooding. Upon his arrival, he saw that water was quickly accumulating and flooding all areas around their home and the neighboring Stemple property. The depth of the floodwater was three to four feet. He also saw significant flooding on the church property across the street.

**{¶12}** Frank DiBlasi said he removed damaged items from his parents' home and thereafter assisted in the construction and repair of their home. He also provided housing for his parents during the period of time their home was uninhabitable.

**{¶13}** Frank DiBlasi said that after Mr. Mapes removed the footbridge from the Barrington Road culvert and the floodwater receded, he went to the church property and inspected the footbridge and its metal foundation. He saw that glue was the only means by which the church secured the bridge to the foundation. He said the only obstruction to the free flow of water that day was the bridge that had blocked the culvert pipe running under Barrington Road. He took photographs of the flooding of appellants' properties and the area on the church property near Barrington Road where Mr. Mapes had placed the footbridge.

**{¶14}** Gwendolyn Stemple stated in her affidavit that during the flooding incident on May 31, 2010, water accumulated inside her home that was at least two feet deep and higher in some areas. She said that after the flood, her home was uninhabitable

4

and everything in it was damaged or destroyed. She said that, due to the significant amount of water damage, her home was demolished and rebuilt. She said that as a result of this flooding, she was forced to stay out of her home between May 31, 2010 and October 2010.

{¶15} Appellants' expert, Richard L. Zimmerman, a registered architect, prepared a narrative report and affidavit detailing his findings and conclusions. Based on an aerial photograph of the area, he said that a natural drainage ditch runs in a westerly direction along the front of appellants' properties on the south side of Mayfield Road. The ditch flows into a culvert at Mayfield Road about two houses west of appellants' properties. The ditch crosses northbound under Mayfield Road, and then continues onto the church property on the north side of Mayfield Road. The ditch flows diagonally in a northwesterly direction across the church property. The ditch runs under a wooden pedestrian footbridge on the church property and, finally, turns left or west into a five-foot-high culvert pipe that runs under Barrington Road, which is the western border of the church property.

{¶16} Mr. Zimmerman stated that, based on his review of the evidence, the May 31, 2010 rainfall flowed along the established drainage ditch previously described. He said the rainwater flowed west along the front of appellants' properties on the south side of Mayfield Road. The water flowed under Mayfield Road and then onto the church property in a northwesterly direction. The water continued to flow along the church property until it dislodged the footbridge, which was about two-thirds of the distance along the ditch on the church property. The water caused the footbridge to be carried a short distance along the ditch until it lodged within a culvert pipe at Barrington Road.

5

The footbridge is about four feet wide and 12 feet long. The culvert pipe is located at the point that the drainage ditch leaves the church's property, flowing under Barrington Road. Mr. Zimmerman said the blocked culvert pipe caused the approaching flow of water to back up, flooding appellants' properties.

{¶17} Mr. Zimmerman said the drainage ditch provides essential storm drainage for many properties along the south side of Mayfield Road, including appellants' properties. He said that for many years prior to and subsequent to this rainfall, appellants' properties have never been subjected to any flooding. Moreover, despite the severe flooding caused in this incident, once the footbridge was removed from the culvert pipe, appellants' properties drained quickly and full drainage flow was restored.

{¶18} Mr. Zimmerman said the base support of the wooden footbridge is comprised of two steel beams that are anchored in the ground. He said the sole means by which the church secured the footbridge to the steel members was by applying an adhesive glue along the top surfaces of the steel beams. The church then placed the wooden footbridge on top of these glued surfaces.

{¶19} Mr. Zimmerman said it is commonly accepted and prudent architectural and construction practice to require mechanical attachments, such as nails, screws, or bolts, in attaching wood to steel for exterior applications, but that the church did not use any such mechanical attachments. He concluded that the attachment of the wood footbridge to its steel supports by nothing more than glue allowed the bridge to float downstream and to block the culvert pipe. In support of his conclusion that the bridge blocked the culvert pipe, he said appellants' photographs show the footbridge was still covered with much of the storm and drainage debris that collected with it to effectively

dam the culvert pipe. Mr. Zimmerman said it was inappropriate for the church to rely solely on an adhesive to attach the bridge to its steel supports, and that detachment of the bridge from its foundation was foreseeable since both the bridge and its foundation are regularly subjected to the elements.

{¶20} Mr. Zimmerman concluded the church was negligent in constructing the bridge in that the church did not properly secure it to its metal foundation. Further, Mr. Zimmerman concluded that the church's negligence was the proximate cause of the flooding of appellants' properties. He said the flooding that occurred on the DiBlasi and Stemple properties on May 31, 2010 was caused by the footbridge on the church's property coming off its moorings and then blocking the flow of water at the culvert pipe running under Barrington Road. He said this blockage was the "sole, direct and proximate cause of the flooding" on appellants' properties.

{¶21} In support of its summary-judgment motion, the church submitted the affidavit of church member William Rudolph. He stated that in 2008, the church constructed the footbridge over a creek on the church property for the use of its members. Mr. Rudolph said the bridge was secured to the steel beams not only by an adhesive, but also by nails inserted by a "Hilte" gun. He did not describe or explain what he meant by a Hilte gun. In any event, he conceded the bridge came loose from its foundation in the storm and moved from its original location.

{¶22} The church also submitted a report of its expert, Phillip H. DeGroot, a hydrologic engineer. Mr. DeGroot said that, based on his site inspection of the area, there are five "possible causes" of the May 31, 2010 flooding incident. He ran simulations for each of these possible causes, assuming different percentages of

7

blockage of the Barrington Road culvert and also the Mayfield Road culvert near appellants' properties. From these "possible causes," he concluded that the "most likely cause" of the flooding of appellants' properties was a blockage of the culvert at *Mayfield Road*, not the culvert at Barrington Road, and that there was no blockage of the Barrington Road culvert by the footbridge. The "rationale" offered by Mr. DeGroot in support of this "scenario" was that the photographs submitted by appellants did not include any photographs of the footbridge lodged against the Barrington Road culvert. However, according to Frank DiBlasi's affidavit, Mr. Mapes had moved the footbridge from the Barrington Road culvert before Frank DiBlasi went to the church property and photographed the footbridge on the shoulder of Barrington Road. Moreover, Mr. DeGroot did not reference any facts in evidence supporting his conclusion that there was a blockage of the Mayfield Road culvert. Further, Mr. DeGroot did not explain the *undisputed* eyewitness testimony that: (1) the footbridge had blocked the Barrington Road culvert and was the only obstruction of the free flow of water; (2) *the church property* was also flooded from blockage of the Barrington Road culvert; and (3) upon removal of the footbridge, the floodwater immediately receded.

{¶23} The trial court entered summary judgment in favor of the church. The court found that, even if the footbridge was negligently constructed, according to Mr. DeGroot, this negligence was not the proximate cause of the flooding and the most likely cause of the flooding was a blockage of the Mayfield Road culvert. The court found that appellants failed to rebut these conclusions. However, Mr. DeGroot's opinion was contradicted by Mr. Zimmerman, who concluded that the church's negligent construction of the footbridge caused it to come off its foundation and block the

8

Barrington Road culvert and that this blockage was the sole proximate cause of appellants' flooding.

{¶24} Appellants appeal the trial court's judgment asserting two assignments of error. For their first assigned error, appellants allege:

{¶25} "The trial court committed prejudicial error when it improperly engaged in weighing evidence, determining credibility of expert witnesses to decide issues of fact and disregarding the question of fact created by conflicting expert opinions when it granted the Defendant-Appellee's Motion for Summary Judgment."

{¶26} Appellants argue the trial court erred in granting summary judgment in favor of the church because, in doing so, the court disregarded questions of fact created by the parties' opposing experts and found the church's expert was more credible than appellants' expert.

{¶27} Summary judgment is a procedural device intended to terminate litigation and to avoid trial when there is nothing to try. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358 (1992). Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 268 (1993).

{¶28} The party seeking summary judgment on the ground that the nonmoving party cannot prove his claim bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the

9

absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).

**{¶29}** The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. *Dresher*, *supra*, at 293.

**{¶30}** If this initial burden is not met, the motion for summary judgment must be denied. *Id.* However, if the moving party has satisfied his initial burden, the nonmoving party then has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against him. *Dresher*, *supra.*

**{¶31}** Since a trial court's decision whether or not to grant summary judgment involves only questions of law, we conduct a de novo review of the trial court's judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, ¶41 (11th Dist.).

**{¶32}** In determining a motion for summary judgment, the trial court may not weigh or assess the credibility of the evidence. *Steele v. Auburn Vocational School District*, 104 Ohio App.3d 204, 207 (11th Dist.1994). Further, where the parties present conflicting experts' opinions, the credibility of one expert opinion over another is not a proper determination in ruling on a summary-judgment motion. *Morton Internatl., Inc. v. Continental Ins. Co.*, 104 Ohio App.3d 315, 323 (1st Dist.1995). Moreover, "[i]n reviewing a summary-judgment motion, a trial court should not reject one expert opinion for another simply because it believes one theory over the other." *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 613 (1998). For purposes of a summary-judgment motion,

expert opinions are to be accepted as true. *Smith v. Towns*, 10th Dist. Franklin No. 91AP-1410, 1992 Ohio App. LEXIS 3221, *11 (June 16, 1992). Conflicting expert opinions regarding the defendant's liability raise a genuine issue of material fact, precluding summary judgment. *Id.*

{¶33} In order to establish an actionable claim for negligence, the plaintiff must establish: (1) the defendant owed a duty to him; (2) the defendant breached that duty; (3) the defendant's breach of duty proximately caused his injury; and (4) he suffered damages. *Bond v. Mathias*, 11th Dist. Trumbull No. 94-T-5081, 1995 Ohio App. LEXIS 979, *6 (Mar. 17, 1995).

{¶34} Appellants' expert, Mr. Zimmerman, stated he has 35 years experience as an architect during which he has designed and supervised the construction of many properties with physical characteristics similar to those involved in the instant matter. He said his opinions were stated with a reasonable degree of professional architectural certainty. He also said that, based on his education, training, and experience, he is competent to testify with regard to the issues raised in this matter. Further, Mr. Zimmerman provided a basis for his opinion. He said it was based on his site inspection, his review of the photographs taken by appellants at the time of the flooding incident, the pleadings, and the parties' responses to written discovery. Further, he provided a detailed narrative statement of the underlying facts and reasons in support of his conclusions, in compliance with Evid.R. 705.

{¶35} Mr. Zimmerman concluded that the church was negligent in constructing the footbridge and that its negligence allowed the footbridge to become dislodged from

11

its foundation and block the Barrington Road culvert, which in turn caused the rainwater to back up and flood appellants' properties.

**{¶36}** In contrast, church member Mr. Rudolph said the church properly constructed the footbridge. Moreover, the church's expert Mr. DeGroot, a hydrologic engineer, said the "most likely cause" of appellants' flooding was a blockage of the culvert on Mayfield Road, not the Barrington Road culvert.

**{¶37}** Thus, genuine issues of material fact existed regarding whether the church negligently constructed the footbridge and whether its negligence was the proximate cause of appellants' flooding.

**{¶38}** As noted above, in entering summary judgment, the trial court found that Mr. DeGroot concluded the most likely cause of the flooding was a blockage at the Mayfield Road culvert, and that appellants failed to rebut this conclusion. However, Mr. Zimmerman concluded that the blockage of the Barrington Road culvert was the sole proximate cause of appellants' flooding, effectively rebutting Mr. DeGroot's position. By ignoring or rejecting Mr. Zimmerman's opinion, the trial court essentially found Mr. DeGroot's report was more credible than Mr. Zimmerman's. However, as noted above, on summary judgment, expert opinions are accepted as true, and the trial court may not enter summary judgment based on its determination that one expert is more credible than another. *Smith*, *supra*; *Steele*, *supra*.

**{¶39}** The church argues the trial court was authorized to enter summary judgment because, in order to avoid summary judgment, appellants were required, but failed, to eliminate the other possible causes of the flooding, including the alleged blockage at the Mayfield Road culvert, suggested by Mr. DeGroot. In support, the

church cites *Gedra v. Dallmer Co.*, 153 Ohio St. 258 (1950). In *Gedra*, the Ohio Supreme Court held that if the plaintiff's injury might have resulted from any one of several causes, the plaintiff must produce evidence excluding those causes for which the defendant is not liable. *Id.* at paragraph two of the syllabus.

{¶40} The Ohio Supreme Court explained its holding in *Gedra* in *Westinghouse Electric Corp. v. Dolly Madison Corp.*, 42 Ohio St.2d 122 (1975). In *Westinghouse*, the Supreme Court stated that where *the plaintiff's evidence* is such that it is as reasonable to infer other proximate causes for which the defendant is not liable, the plaintiff has failed to supply proof of proximate cause. *Id.* at 127. The Court in *Westinghouse* stated that where the plaintiff presents proof that a certain cause was merely one of a number of possibilities, to allow an inference that one cause was probable, the other causes must be eliminated. *Id.* However, the plaintiff does *not* have to eliminate other causes where he presents "'some evidence, direct or inferential, that the agency which produces an injury is the result of the negligence of [the] defendant.'" *Id.* at 128, quoting *Gedra*, *supra*, at 265. Otherwise stated, the plaintiff is not required to eliminate other causes of his damages where he presents evidence from which it is reasonable to infer the defendant's negligence was the cause of the injury. *Westingouse*, *supra*. This is true even if the defendant disputes the plaintiff's evidence. *Id.*

{¶41} *Gedra* and *Westinghouse* are inapposite because appellants alleged only one proximate cause, i.e., blockage of the Barrington Road culvert, and their evidence did not raise a reasonable inference that the flooding was caused by a blockage at the Mayfield Road culvert. Moreover, the church argues that, because Mr. DeGroot suggested five "possible causes" of appellants' flooding, including blockage of the

13

Mayfield Road culvert, appellants were required to disprove each of these "possible causes." However, the Ohio Supreme Court rejected this argument in *Westinghouse, supra*, in which the Court stated that *Gedra* does not impose on a plaintiff the burden of eliminating other *possible* causes suggested by the defendant in order to make the plaintiff's case. *Id.* at 127. Thus, pursuant to *Gedra* and *Westinghouse*, appellants were not required to eliminate the five possible causes of the flooding, including the Mayfield Road culvert scenario, suggested by Mr. DeGroot.

{¶42} We therefore hold that, because genuine issues of material fact exist in this case, the trial court erred in entering summary judgment. On remand, these questions of fact are to be determined in trial.

{¶43} Appellants' first assignment of error is sustained.

{¶44} For their second assigned error, appellants contend:

{¶45} "The trial court committed prejudicial error in granting the Defendant-Appellee's Motion for Summary Judgment by accepting conclusions of the Defendant's expert that were not based [on] evidence."

{¶46} Appellants argue the trial court erred in accepting Mr. DeGroot's opinion that the most likely cause of the flooding on appellants' properties was a blockage at the Mayfield Road culvert because there is no evidence there was any blockage of the Mayfield Road culvert.

{¶47} As determined above, the trial court erred in accepting Mr. DeGroot's conclusions over those of Mr. Zimmerman. However, while Mr. DeGroot's conclusions are not based on facts in evidence, they are allegedly based on certain assumptions and calculations alluded to in his report. Thus, for the same reasons it was error for the

14

trial court to essentially find that Mr. DeGroot's opinion was more credible than Mr. Zimmerman's, it would be error for this court to hold that the trial court erred in considering Mr. DeGroot's report. This is because, on summary judgment, the trial court must accept both experts' opinions as true. *Smith, supra.* The problem here is that the trial court did not accept Mr. Zimmerman's countervailing conclusions as true. On remand, the parties will have an opportunity to present their experts at trial and to cross-examine the adverse party's expert, and it will be for the trier of fact to determine which expert is more credible. *Id.*

{¶48} Appellants' second assignment of error is overruled.

{¶49} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with the opinion.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.