[Cite as *Tisci v. Smith*, 2016-Ohio-635.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

CARMELLA TISCI,

      PLAINTIFF-APPELLANT,             CASE NO.  5-15-30

      v.

KENT SMITH,                         O P I N I O N

      DEFENDANT-APPELLEE.


**Appeal from Hancock County Common Pleas Court**
**Juvenile Division**
**Trial Court No. 20144159**

**Judgment Affirmed**

**Date of Decision:   February 22, 2016**


**APPEARANCES:**

    *Howard A. Elliott* **for Appellant**

    *James S. Adray* **for Appellee**

**SHAW, P.J.**

{¶1} Plaintiff-appellant Carmella M. Tisci ("Tisci") brings this appeal from the October 2, 2015, judgment of the Hancock County Common Pleas Court, Juvenile Division, granting her child support from defendant-appellee Kent L. Smith, II ("Smith"), and entering a companionship schedule for the parties.

*Relevant Facts and Procedural History*

{¶2} On October 6, 2014, Tisci filed a "Complaint for Custody and to Establish Child Support" against Smith. Tisci sought an order allocating parental rights and responsibilities for the minor child, K.S., and an order granting her child support from Smith backdated to K.S.'s birth in April of 2014.

{¶3} On January 23, 2015, a judgment entry was filed setting temporary orders as to, *inter alia*, parenting time for K.S.

{¶4} On March 23, 2015, Smith filed a "motion to show cause" contending that pursuant to the temporary orders Tisci was supposed to provide parenting time for Smith every other Sunday for four hours and Tisci was supposed to provide the transportation for that parenting time. Smith argued that Tisci was not abiding by that order.

{¶5} On June 22, 2015, a hearing was held before a magistrate on all of the pending issues. At the beginning of the hearing, the parties presented a number of stipulations resolving the majority of the issues. Tisci's attorney read the

stipulations into the record, which included stipulations that K.S. would take Smith's last name, that Smith would carry medical insurance for K.S., that the tax exemption for K.S. would be alternated yearly, that any extra-curricular activities such as "school activities, athletics, music, dance, baton, gymnastic or what we call other enrichment activities" would be split "fifty/fifty," and that child support would be set at $335.36 per month, backdated to K.S.'s birthdate. (June 22, 2015, Tr. at 6-7). Both attorneys and both parties agreed in open court to those stipulations before the hearing proceeded.

{¶6} After the parties' stipulations were read into the record and agreed to, the magistrate inquired as to what issues remained for determination. The parties' attorneys, including Tisci's attorney, stated that the only remaining issues to be determined by the magistrate were the visitation of the child and Smith's show-cause motion. (Tr. at 8). The hearing then proceeded and Tisci was called to the stand.

{¶7} Tisci testified that at the time of the hearing she lived with her mother in Findlay. Smith was living and working in Toledo, making exchanges more difficult due to the driving involved. Tisci testified that at the time of the hearing she was not employed and was finishing her master's program at the University of Toledo for Speech Language Pathology. Tisci testified that after she finished her program in July and got licensed she was planning to get a job in her field.

{¶8} Tisci reiterated during her testimony that she agreed with the stipulations read into the record by her attorney. She was then asked by her attorney what she would like Smith to receive as far as visitation with K.S. Tisci stated that she would like Smith to receive K.S. every other week from Thursday at approximately 1 p.m. to Saturday at 7 a.m., to coincide with the days Smith had off work, Thursday and Friday.

{¶9} Tisci did testify that she had some concerns with Smith parenting K.S. dating back to when Tisci was pregnant. Tisci testified that when she first informed Smith she was pregnant Smith threatened to kill himself and he threatened to clear out all of his money in his bank account and give his money to his nieces "so that our daughter wouldn't see a dime of his money." (Tr. at 23). Tisci also testified that K.S. occasionally required breathing treatments and she was not confident in Smith's ability to care for K.S. (*Id*. at 37). However, Tisci testified that K.S. was developing well and that K.S. was actually ahead of most children her age. (*Id*. at 30). Tisci testified that K.S. learned some of her skills at daycare, which costs $177.00 per week, but she only paid $46.23 due to government assistance.

{¶10} Tisci's attorney then asked whether Smith had paid for any of K.S.'s daycare expenses and Smith's attorney objected, stating that the stipulations covered daycare. Tisci's attorney argued that the stipulations did not cover

daycare expenses. The magistrate inquired as to whether Tisci's attorney was trying to categorize the daycare under the "extracurricular" portion of the stipulations, instead of simply being part of the stipulated child support obligation that had been backdated to K.S.'s birth. (Tr. at 33). The magistrate said she wanted to know if the daycare was not part of the stipulation so she allowed Tisci to answer her attorney's question, and Tisci stated that Smith had not paid anything for daycare in the past up to that point.

{¶11} On cross-examination Tisci admitted that she unilaterally changed the temporary order that had been issued by the court, crossing out that she was supposed to provide transportation for Smith's Sunday visitation time with K.S. (Tr. at 41). Tisci also testified that since Smith lived in Toledo she did not want to drive up to Toledo for Smith's Sunday visitation and "drive around for four hours," so she was not doing it. (Tr. at 48-49).

{¶12} Smith then testified on his own behalf that he currently resided in Toledo and that he worked for the Lucas County Sheriff's Office. He also reiterated that he agreed with the stipulations that had been submitted. Smith testified that he would like to have K.S. on Thursdays and Fridays, his days off, and in addition he testified that he would like to have K.S. every other weekend, so every other week he would have K.S. from Thursday to Sunday. Smith testified that when he had to work on the weekends his parents, K.S.'s paternal

grandparents, who were both retired educators, would watch K.S. Smith testified that if his parents did not watch K.S., one of his three sisters would. Smith testified that one of his sisters was a "long term sub" for the "TPS school system," one worked for the "Toledo Family Center" and one took "care of MRDD people * * * [k]ind of a home health aid[.]" (Tr. at 56). In addition, Smith testified that he was familiar with, and had administered, K.S.'s breathing treatments. He also testified that his sisters and his mother were familiar with administering the breathing treatments as well.

{¶13} Smith testified that he thought pursuant to the temporary orders Tisci was required to provide transportation for his visitation with K.S. on Sundays, and she was not providing that transportation, which was the basis of his show cause motion. Smith testified that, with a few exceptions, he was doing all of the transportation for K.S.

{¶14} Smith also testified that he did send messages to Tisci threatening to kill himself and that he wished that the baby would die in her womb, but he testified that they were during her pregnancy. Smith testified that he "wasn't going to hurt [him]self in any way. That was only a tactic to try and get an abortion." (Tr. at 62). However, Smith testified that "now that [K.S. is] here, I love her. I'm glad she's here and she's my world now." (*Id.*)

{¶15} On cross-examination Smith testified that he had not paid any money specifically for daycare expenses. The record reflected, however, that Smith had paid $1,000 toward his child support obligation. On re-direct Smith testified that he had asked Tisci why he could not take K.S. rather than put her in daycare since he worked second shift. (Tr. at 75).

{¶16} At the conclusion of Smith's testimony, the parties proceeded to closing arguments. During closing arguments, Tisci's attorney stated that he thought the court needed to address the daycare expenses, stating that while Tisci had received government assistance in the past, "that's going to come to an end." (*Id*. at 82).

{¶17} On July 13, 2015, the magistrate filed its decision on the matter. The magistrate made a number of findings of fact and conclusions of law. With regard to the child support, the magistrate recommended that the child support be set at the stipulated amount. With regard to Smith's parenting time, the magistrate recommended that Smith receive K.S. every other week from Thursday at 4:00 p.m. to Sunday at 7:00 a.m. In addition, Smith would receive parenting time every Thursday at 4:00 p.m. until Friday at 8:00 p.m. Further, the magistrate recommended that Smith's show-cause motion be denied.

{¶18} Also on July 13, 2015, the same day that the magistrate filed her decision, the parties filed a written copy of their "stipulations for the hearing June

22, 2015." (Doc. No. 32). These written stipulations reflect what was read into the record at the hearing, with the notable exceptions that the child support amount was set at $326.00 per month instead of $335.36, and Smith was given credit for the $1,000 he had paid toward child support. The written stipulations were signed by Smith's counsel, Tisci's counsel, and Tisci.[1] (*Id.*) It is not clear why the stipulated amount of child support was changed or if the amount presented at the hearing was simply misstated, but the written stipulations were signed by both attorneys and Tisci. The next day, July 14, 2015, the trial court filed an "Order adopting stipulations for the hearing June 22, 2015," adopting the stipulations of the parties.[2] (Doc. No. 33).

{¶19} On July 22, 2015, Tisci filed objections to the magistrate's decision. Tisci specifically objected to the fact that the magistrate did not decide to order Smith to pay for daycare expenses separate from his backdated child support obligation. Tisci also objected to the fact that Smith was awarded parenting time on a day when he had to work.

{¶20} On September 9, 2015, Tisci filed a memorandum in support of her objections to the magistrate's decision. In the memorandum Tisci argued, *inter alia*, that the magistrate should have determined that daycare costs fell under the

---

[1] Only Smith's attorney signed the written stipulations, he did not sign them himself.
[2] Although it was unnecessary, the magistrate also signed this order along with the trial court.

stipulation related to each parent paying for 50% of "the child's extracurricular activities." (Doc. No. 36).

{¶21} On September 17, 2015, the trial court filed its "judgment entry/orders on objections." In the entry, the trial court found no merit to either of Tisci's objections. With respect to Tisci's claim that the magistrate erred by not recommending any costs for daycare, the trial court stated that

> **[d]aycare expenses are part of a calculation for child support. Based upon a review of the stipulation by the parties, they agreed that [Smith] should pay $326.00 monthly to [Tisci] commencing with the child's birth. [Tisci] submits that the daycare expenses should be part of the stipulated expenses described as extracurricular activities and enrichment fees. However, this would be an unusual application of the term "extracurricular." In addition, the usual course is to include the daycare expenses in the child support calculation. Plaintiff states in her testimony that she anticipates a large change in daycare expenses in the future. Once the change in daycare expenses occurs, the Plaintiff can request an adjustment from the child support enforcement agency.**

(Doc. No. 37). The trial court thus overruled Tisci's objection. However, the trial court noted that the magistrate's original determination of child support was no longer proper due to the written stipulation filed and ordered subsequent to the hearing. The trial court thus adjusted child support from $335.36 to $326.00 per the written stipulation and ordered Smith credited for having paid $1,000 in child support.

{¶22} In reviewing Tisci's other objection, the trial court found "no error in the parenting time schedule outlined by the Magistrate." (*Id.*) While finding no error, the trial court did alter the schedule slightly, giving Smith summer parenting time in one week increments rather than four consecutive weeks. (*Id.*) With the minor exceptions, the trial court accepted the remaining recommendations of the magistrate, followed the stipulations of the parties, and entered judgment accordingly. An amended judgment entry was filed October 2, 2015, containing a full appendix apprising the parties of, *inter alia*, their holiday parenting time. It is from this judgment that Tisci appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED IN COMPUTING THE CHILD SUPPORT OBLIGATION HEREIN OF THE APPELLEE, BY NOT INCLUDING CHILDCARE EXPENSES AS PART OF THE CALCULATION.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED IN ALLOCATING PARENTING TIME TO THE APPELLEE DURING [A] PERIOD OF TIME WHEN HIS EMPLOYMENT PRECLUDED HIS AVAILABILITY TO EXERCISE PARENTING TIME AND THE APPELLANT WAS AVAILABLE AT SUCH TIMES TO EXERCISE PARENTING TIME.**

*First Assignment of Error*

{¶23} In her first assignment of error, Tisci argues that the trial court erred in "computing the child support obligation." Specifically, Tisci contends that the

trial court should have awarded daycare expenses despite the parties' stipulation regarding child support, as the "stipulation does not appear in the record as to be the end-all as to the computation of child support." (Appt.'s Br. at 6).

{¶24} At the outset we would note that, "[a] stipulation is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to eliminate the need for proof on an issue or to narrow the range of issues to be litigated." *Kestner v. Kestner*, 7th Dist. Columbiana No. 06 CO 39, 2007-Ohio-6222, ¶ 29, citing *Wilson v. Harvey,* 8th Dist. Cuyahoga No. 85829, 2005-Ohio-5722, ¶ 12. " '[W]hen a stipulation of facts is handed up by the adversaries in a case, the trier of facts must accept what is set forth as a statement of settled fact that is undisputed and binding upon the parties to the agreement.' " *DiSanto v. Safeco Ins. of Am.,* 11th Dist. Portage No. 2005-P-0095, 2006-Ohio-4940, ¶ 53, quoting *Newhouse v. Sumner*, 1st Dist. No. C–850665, at 3–4, 1986 WL 8516 (Aug. 6, 1986).

{¶25} Courts have allowed parties to stipulate to the amount of child support one parent must pay to another. *Kestner v. Kestner*, 7th Dist. Columbiana No. 06 CO 39, 2007-Ohio-6222, ¶ 30, citing *Baddam–Reddy v. Baddam–Reddy,* 8th Dist. Cuyahoga No. 85038, 2005-Ohio-3432, at ¶ 8; *Earl v. Earl,* 9th Dist. Lorain No. 04CA008432, 2004-Ohio-5684, at ¶ 7; *see also Spicer v. Spicer*, 6th Dist. Erie No. E-14-101, 2015-Ohio-799, ¶ 19; *Havens v. Havens*, 10th Dist.

Franklin No. 11AP-708, 2012-Ohio-2867, ¶¶ 21-24. Moreover, courts have also stated that it is "fundamentally unfair" for a party to enter into a stipulation, fail to object to an alleged inaccuracy, and then argue that a stipulation is against the weight of the evidence on appeal. *Havens* at ¶ 22, citing *Nyamusevya v. Nkurunziza,* 10th Dist. No. 10AP857, 2011–Ohio–2614, ¶ 22.

{¶26} Finally, we note that "[a]n appellate court reviews decisions involving child support under an abuse of discretion standard." *Soukup v. Kirchner,* 11th Dist. Geauga No.2012–G3095, 2013–Ohio–2818, ¶ 19, citing *Sullivan v. O'Connor,* 11th Dist. Geauga Nos. 2005-G-2641, 2005-G-2642, 2006–Ohio–3206; *Booth v. Booth,* 44 Ohio St.3d 142 (1989). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶27} In this case the parties began their final hearing by entering into a number of stipulations. Those stipulations were subsequently filed in writing and signed by the parties' attorneys and by Tisci. Two of the seven stipulations are pertinent to this appeal, and read as follows.

> **6. The parties agree to pay 50% each of the child's extracurricular activities and enrichment fees including but not necessarily limited to athletics[,] music, dance, baton, gymnastics, and other forms of enrichment as the parties may determine.**

> **7. The parties agree that father's child support obligation will commence on the date of the birth of the child and that it will be the $326.00 per month amount, and further that father shall receive a credit for the $1,000 paid in May 2015.**

{¶28} At the final hearing, the parties indicated that they stipulated to these issues, among others, to reduce what was before the magistrate for a decision. Tisci's attorney actually informed the magistrate of the stipulations at the hearing and read them into the record. After the stipulations were read into the record the magistrate asked if the only issue that remained to be litigated was visitation. (Tr. at 8). The attorneys stated that Smith's show-cause motion still had to be litigated, but that was all that remained other than visitation. Neither Tisci nor her attorney gave any indication at that time that they were dissatisfied with the stipulation regarding child support, or that they expected to litigate separate, additional issues.

{¶29} Tisci's attorney furthered the idea that child support had been determined as the hearing proceeded during his questioning of Tisci. Tisci's attorney stated as part of a question, "the rub or where we're at today is visitation, and I want you to tell the Court in your own words what you would like to see Mr. Smith receive as far as visitation and why." (Tr. at 14-15). Tisci's attorney thus emphasized that visitation, along with the show-cause motion, was the issue before the court.

{¶30} Despite seemingly repeatedly acknowledging that the parties were only litigating the visitation issue and the show-cause motion at the hearing that

day, Tisci's counsel eventually began to ask Tisci about taking K.S. to daycare and whether Smith had ever paid for any of the daycare expenses. Smith's counsel objected, stating that he thought the stipulations covered child care. The magistrate allowed Tisci to answer, though the magistrate questioned whether Tisci's counsel was attempting to assert that the daycare expenses should fall under the separate "extracurricular" stipulation. Tisci answered her attorney's question, testifying that Smith had not paid any money toward daycare. Tisci also testified that her daycare expenses were $177.00 per week but Tisci received government subsidies lowering the actual cost to $46.23. However, Tisci indicated that daycare expenses were likely to change in the near future when Tisci got a job.

{¶31} Based on Tisci's testimony, her attorney argued to the magistrate, and later the trial court, that even though Smith's child support obligation was backdated to K.S.'s birth, Smith should separately pay for K.S.'s daycare and that this should be in addition to the stipulated child support amount. The magistrate and the trial court disagreed with Tisci and did not award an additional amount of child support above the stipulated amount.

{¶32} When Tisci objected to the magistrate's decision on this issue, the trial court overruled the objection, finding that daycare expenses "are part of a calculation for child support" and the parties explicitly stipulated to a child support

obligation. (Doc. No. 38). In addition, the trial court determined that Tisci's argument that the daycare expenses should separately fall under the "extracurricular" stipulation would result in "unusual application of the term 'extracurricular,' " which according to the stipulation included things like "music, dance, baton, [and] gymnastics." (Doc. No. 38); (Doc. No. 32). The trial court then noted that Tisci anticipated a "large change" in daycare expenses in the future based on her job situation and at that time she could request an adjustment to child support. (*Id.*)

{¶33} On our own review of the facts of this case, we cannot find that the trial court abused its discretion in accepting the stipulated amount of child support and determining that the daycare expenses would not fall under the "extracurricular" stipulation. Smith was ordered to pay child support at the stipulated amount dating back to K.S.'s birthday, reimbursing Tisci, in theory, for Smith's share of daycare expenses, which as the trial court states, should be part of a calculation for child support. Notably, the written stipulation itself actually states that the obligation "*will be* the $326.00 per month amount." (Emphasis added.) (Doc. Nos. 32, 33). There is no indication in the written stipulation that it is a "minimum threshold amount" as Tisci suggests, or that it was subject to further litigation.

**{¶34}** If Tisci wanted more for her daycare expenses she could have negotiated a higher amount of child support to stipulate to, or she could have forgone stipulating to an amount altogether and litigated the issue of child support fully, allowing both parties to put on evidence as to their incomes and adjustments. She did neither. Instead, Tisci explicitly agreed to a stipulation multiple times at a hearing, then agreed to the stipulations again in writing—at a different, slightly lower amount no less.

**{¶35}** Moreover, we would note that both the magistrate and the trial court were clearly conscious of the fact that the child support would be subject to modification in the future due to several factors including: 1) Tisci would soon be employed, raising her income from nothing or an imputed minimum to her actual income; 2) Smith would be exercising more parenting time than he was previously perhaps lowering the amount of daycare expenses; and 3) Tisci's daycare expenses may be changing (rising or falling) due to her employment status.

**{¶36}** Furthermore, although Tisci indicated that she had to take K.S. to daycare while she was in school and interning in the past, it was not clear that she needed to take K.S. to daycare at the time of the hearing, where she admitted she was essentially finished with school and was not otherwise working. Thus the daycare expenses could be subject to *significant* changes, and could be further

support for the trial court not to award daycare expenses separately from the stipulated child support figure.

{¶37} After reviewing the record and Tisci's arguments, we cannot find that the trial court abused its discretion in declining to separately award her daycare expenses where she stipulated to a child support figure. Accordingly, Tisci's first assignment of error is overruled.

*Second Assignment of Error*

{¶38} In Tisci's second assignment of error she argues that the trial court erred in allotting parenting time between the parties. Specifically, she contends that Smith was improperly allotted parenting time during days he would be working when Tisci was available to parent K.S.

{¶39} We review a trial court's decision in a domestic relations case concerning the allocation of parental rights under an abuse of discretion standard. *See August v. August*, 3d Dist. Hancock No. 5-13-26, 2014-Ohio-3986, ¶ 20, citing *Booth v. Booth,* 44 Ohio St.3d 142, 144 (1989).

{¶40} In this case, the magistrate recommended, and the trial court ordered, that Smith, the non-residential parent by stipulation of the parties, be awarded parenting time on alternate weeks from 4:00 p.m. Thursday until 7:00 a.m. on Sunday. Smith was also awarded parenting time weekly from Thursday at 4:00

p.m. to Friday at 8:00 p.m. Smith's parenting time was allotted largely to coincide with his work schedule, as his days off were Thursday and Friday.

{¶41} Tisci takes issue on appeal with the fact that Smith would have parenting time every other Saturday when Smith would actually be working. We note that Tisci repeatedly and incorrectly states in her brief to this Court that the trial court ordered parenting time for Smith to extend to 7:00 *p.m.* Sunday, but that was neither the recommendation of the magistrate, nor the order of the trial court. The recommendation of the magistrate and the order of the trial court clearly stated that Smith would have K.S. until 7:00 *a.m.* on Sunday, which means that Smith would only have K.S. for one day while he was working, not two as Tisci suggests to this Court. Nevertheless, Tisci argues that she would be available to parent K.S. on the Saturdays when Smith was at work and thus it could not be in the best interest of K.S. to award Smith parenting time when he was not available to exercise that parenting time.

{¶42} Essentially, Tisci asks this Court to make a rule that a parent who has to work should not be awarded parenting time on the days of his or her employment because that parent is unable to exercise companionship time during work hours. Notably, if we were to adopt Tisci's argument, Smith could use the same claims against *her* when she does get a job to establish that he would be able to exercise parenting time on days when Tisci worked or was in school. Tisci

already stated that she placed K.S. in daycare multiple days per week, and by her own logic, if Smith was able to exercise companionship time during those days we would have to allot Smith that parenting time.[3]  Tisci's logic is thus, at best, questionable.  However, regardless of the problems with the application of Tisci's logic, we do not accept Tisci's argument and we find no abuse of discretion in the trial court for similarly rejecting her argument.

{¶43} Smith testified before the magistrate that his parents were retired educators and would watch K.S. while he worked his Saturday hours.  Smith testified that if his parents were not available one of his three sisters would watch K.S., and he testified as to their occupations.  Smith also testified that his family members could give K.S. her breathing treatments.  In addition, Smith testified that he would like to be able to exercise parenting time after he gets off work from those Saturday hours.

{¶44} Smith provided testimony as to how K.S. would be cared for while he worked that *one* weekend day, and he indicated he would see K.S. and spend time with her when he got off of work.  Under these circumstances we cannot find that the trial court abused its discretion in allotting parenting time between the parties.  Therefore, Tisci's second assignment of error is overruled.

---

[3] Smith did indicate that he worked second shift during the week and first shift on the weekends.

{¶45} Having found no error prejudicial to Tisci in the particulars assigned her assignments of error are overruled and the judgment of the Hancock County Common Pleas Court, Juvenile Division, is affirmed.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**